**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Bradley J. Buscher,
individually and on behalf of the
Revocable Trust of Bradley J. Buscher,
Cynthia Buscher, Chanel Buscher, and
Beaujona Buscher,

                        Plaintiffs,

                                                  Civ. No. 05-544 (RHK/JSM)
                                                  **MEMORANDUM OPINION**
                                                  **AND ORDER**

v.

Economy Premier Assurance Company,

                        Defendant.

Michael L. Childress, Edward Eshoo, Jr., and Andrew M. Plunkett, Childress Duffy Goldblatt, Ltd., Chicago, Illinois; and Lauren E. Lonergan, David B. Sand, and Elizabeth M. Brama, Briggs and Morgan, PA, Minneapolis, Minnesota, for Plaintiffs.

Timothy J. O'Connor, Kimberly Fleming, Ted E. Sullivan, and William L. Davidson, Lind, Jensen, Sullivan & Peterson, A Professional Association, Minneapolis, Minnesota, for Defendant.

**Introduction**

Plaintiffs Bradley J. Buscher, individually and on behalf of the Revocable Trust of Bradley J. Buscher, Cynthia Buscher, Chanel Buscher, and Beaujona Buscher (collectively "Plaintiffs"), have sued Defendant Economy Premier Assurance Company ("Economy"), seeking a declaratory judgment that damage to their family home is covered under their

insurance policy, which was issued by Economy. Before the Court are cross motions for summary judgment on the issue of coverage. For the reasons set forth below, the Court will grant Plaintiffs' Motion for Partial Summary Judgment, and deny Economy's Motion for Summary Judgment.

## Background

Plaintiffs are the owners of a single-family home located at 2350 Cherrywood Road in Minnetonka, Minnesota (the "home"). Plaintiffs bought the home in July 1995 and, after significant remodeling work had been completed, occupied it in 1998. (B. Buscher Dep. Tr. at 20.) Plaintiffs purchased the insurance policy at issue (the "Policy") from Economy[1] in 1996. (Compl. ¶¶ 12-13; Answer ¶ II.) Plaintiffs qualify as "insureds" under the Policy. (Compl. ¶¶ 8-11; Answer ¶ II.)

In May 2004, the interior of the home sustained physical damage caused by significant water leakage. (B. Buscher Dep. Tr. at 29-30, 32.) Plaintiffs first noticed the water leakage and corresponding ceiling damage in the master bedroom closet and submitted a claim for this damage to Economy soon after its discovery (the "May 2004 claim"). (Id.) Economy adjuster Jami Hage was assigned to the May 2004 claim. (Hage Dep. Tr. at 28-29.) She inspected the damaged area and found water damage to insulation, sheetrock, ceiling, wall paint, baseboard and carpet. (Hage Dep. Tr. at 37.)

---

[1]Economy is an "affiliate company" of MetLife Auto & Home. (Compl. ¶¶ 11-13; Answer ¶ II.) Thus, at times, Economy is referred to as "MetLife" or "MetLife Auto & Home" in the record.

Hage determined that the flashing at the chimney was defective, and this defect had caused the water leakage. (B. Buscher Dep. Tr. at 30; Hage Dep. Tr. at 37.) She also concluded that the lack of flashing at the chimney was due to defective installation, a defective product, or a "maintenance issue."[2] (Id. at 56; see also id. at 66 (Q: "But it was your belief that it was defective installation or a defective product that caused the water damage; correct?" A: "Correct.").) Economy covered the May 2004 loss to the extent that there was water damage in the interior of the home. (Id.) It did not, however, cover the cost to repair the chimney because "repair for the flashing" was a maintenance issue, and thus not "covered under the policy." (Id. at 54, 66; see also infra pp. 5-6.) Hage testified that the water damage resulting from the lack of flashing was a covered loss under the policy. (Id. at 56 (Q: "Though there was a construction defect [Economy] still paid for the interior water damage?" A: "Interior water damage is covered, correct, for that.").)

Hage's handling of the May 2004 claim is consistent with her testimony that water damage resulting from construction defects or maintenance issues is generally covered under the Policy. (Hage Dep. Tr. at 68 ("Does [Economy] pay for resulting water damage?" "Yes.").) Similarly, Hage's supervisor, Dean Bellefeuille, who was also involved in Plaintiffs' claims to Economy, testified that water damage resulting from a construction defect is covered under the Policy, as follows:

---

[2] Bradley Buscher testified that he thought the flashing on the chimney may have blown off in a wind storm. (B. Buscher Dep. Tr. at 30, 42.) However, he also testified that he was "theorizing why all of a sudden the flashing [would] open up at that time." (Id. at 31.)

> Q: [If water] [l]eaks through a construction defect and causes damage, that's covered, isn't it?
>
> A: If it's not mold or rot, yes.
>
> Q: So the mere fact that there's a construction defect does not exclude it from coverage, does not exclude water damage?
>
> A: Correct.
>
> Q: Is that commonly referred to as ensuing loss or resulting loss?
>
> A: Resulting damage.

(Bellefeuille Dep. Tr. at 50.)

Due to the amount of water damage sustained in May 2004, Plaintiffs were concerned that there may have been other water damage to the home. (B. Buscher Dep. Tr. at 40, 49.) Accordingly, they had moisture testing conducted on the walls of the home, which revealed extensive water damage to the exterior building envelope. (B. Buscher Dep. Tr. at 55-57.) Plaintiffs personally observed water in the interior of the home's walls, in the form of wet wood, wet insulation, and other wet materials. (Id. at 74-75.) They also observed a dark black material growing inside the wall, which subsequent investigation determined to be mold. (Id.) In July 2004, based on the investigation results and personal observations, Plaintiffs concluded that, because of the presence of water and mold, the home was uninhabitable. (Id. at 102-03.) At that point, a claim for this additional water damage was submitted to Economy (the "July 2004 claim"); Hage was again assigned to handle the July 2004 claim. (Hage Dep. Tr. at 32.)

Economy's expert witness, Howard Noziska[3], determined the cause of the damage that was the subject of the July 2004 claim was water from wind-driven rain, melting ice, or snow, penetrating the exterior building envelope of the home. (Noziska Dep. Tr. at 94-99, 114-15.) This penetration caused actual physical damage to the interior wall assembly components. (Id.) Noziska found that wall cavities in the home contained high levels of moisture, which caused soft or questionable sheathing and damaged other components of the interior wall assembly. (Id.; see id. at 88-94.) He also opined that the water which had penetrated the exterior building envelope was the cause of mold growth in the interior wall assembly. (Id. at 122.)

In a letter dated January 7, 2005, Economy denied coverage for the July 2004 claim. Economy first explained that "[i]t appears that construction and design defects may have caused the mold and water damage. The . . . policy excludes from coverage loss caused by construction and design defects." (Plunkett Aff. Ex. I.) It also stated that "the policy excludes from coverage damage caused by or resulting from mold. Thus, all mold damage is excluded from coverage." (Id.) The letter then referenced the following relevant portions of the policy:

(1) The coverage portion of the Policy at issue here provides:

Under the property insurance section of this policy, we insure against actual accidental physical loss or damage to property that you or your family own or use anywhere in the world. 'Actual accidental physical loss or damage'

---

[3]The record reflects that Noziska is "a duly Licensed Professional Engineer under the laws of the state of Minnesota." (O'Connor Aff. Ex. 6.)

>means physical damage to tangible property, its theft, or destruction, whether because of the intended or accidental act of someone else or because of an accidental act by you or anyone else covered by this policy.

(Policy at 11 of 31 (emphasis added).)

(2) The <u>exclusion pertaining to construction work</u> (the "construction defect" exclusion) provides:

>[The Policy] doesn't cover loss to property insured by [the Policy] caused by one or more of the following:
>
>b.  Defect, weakness, inadequacy, fault or unsoundness in:
>   1) planning, zoning, siting or development surveying;
>   2) design, specifications, workmanship, construction, grading, compaction;
>   3) materials used in construction or repair;
>   4) maintenance;

(Policy at 21 of 31.)

(3) The <u>exclusion pertaining to mold</u> (the "mold exclusion") provides:

>[The Policy], doesn't cover physical damage caused by wear and tear, latent defect, mechanical breakdown, rust, <u>mold</u>, wet or dry rot, contamination, corrosion, industrial or agricultural smoke, vermin, rodents, termites, insects, or domestic animals, or electrolysis.

(Policy at 15 of 31 (emphasis added).)

Economy implemented a Mold Claim Handling Protocol (the "Mold Protocol") which provided direction to adjusters regarding how to handle mold claims. (Plunkett Aff. Ex. N.)  According to the Economy adjusters, the Mold Protocol applied to Plaintiffs' Claims under the Policy. (See Bellefeuille Dep. Tr. at 41-42, 45.)  The Mold Protocol provides that "Mold as a result of a covered water damage loss **is covered** under all

policies presently written by MetLife Auto & Home." (Plunkett Aff. Ex. N (emphasis in original).)

Plaintiffs filed the instant four-count Complaint for a declaratory judgment seeking a construction of the Policy consistent with a determination of coverage for the July 2004 claim. Plaintiffs assert that the home was damaged by water intrusion and resulting mold. (See Plaintiffs' Mem. in Opp'n at 6.) Count I seeks a determination that the home sustained an "actual accidental physical loss or damage," consistent with the coverage provision of the Policy. (Compl. ¶¶ 20-24.) Counts II through IV seeks a determination that the mold (Count II), construction defect (Count III), and surface water (Count IV)[4] exclusions in the Policy do not preclude coverage of the July 2004 claim. (Id. ¶¶ 25-39.)

## Standard of Decision

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the

---

[4] Economy does not argue that the surface water exclusion applies to Plaintiffs' claim. Thus, the Court will grant Plaintiffs' Motion as to Count IV of the Complaint.

nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**Analysis**

Under Minnesota law, which is applicable in this diversity action, it is settled that the interpretation of an insurance contract is a question of law. Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997). In interpreting an insurance contract, the contract is to be construed as a whole, see id. at 692, and when the language of the insurance policy is clear and unambiguous, the language employed must be given its usual and accepted meaning, see Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998).

"In an action to determine coverage, the initial burden of proof is on the insured to establish a prima facie case of coverage." SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995) (citation omitted). "What constitutes a prima facie showing of coverage depends on the language of the particular policy. The policy must be read as a whole, and unambiguous language must be accorded its plain and ordinary meaning." Id. (citation omitted). There is no dispute in the instant case that the damage suffered by the

home was "actual accidental physical loss or damage to property," (Policy at 11 of 31); therefore, Plaintiffs have established a prima facie case of coverage.

"[O]nce the insured has established a prima facie case of coverage . . . the burden then shifts to the insurer to prove the applicability of [an] exclusion." SCSC Corp., 536 N.W.2d at 313 (internal quotations and citations omitted). "Exclusions are to be narrowly interpreted against the insurer." Id. Economy argues for the application of two separate exclusions—the construction defect exclusion and the mold exclusion. According to Economy, the Policy excludes coverage for all damage caused by construction or design defects, or from use of defective materials. (Economy's Mem. in Supp. at 14-22.) Further, Economy argues that physical damage caused by mold is excluded under the Policy and, to the extent it is covered, Economy's liability is limited to $5,000.[5]  The Court will address each argument in turn.

### A.     The Construction Defect Exclusion

The Policy provides that it does not "cover loss to property insured by [the Policy] caused by one or more of the following: . . . b. Defect, weakness, inadequacy, fault or unsoundness in: . . . 2) design, specifications, workmanship, construction, grading,

---

[5] Economy bases its argument, that any coverage for mold resulting from a covered water loss is limited to $5,000, on a Minnesota Amendatory Endorsement to the Policy. (See infra pp. 15-17.)

compaction; [or] 3) materials used in construction or repair." (Policy at 21 of 31.) Economy interprets the construction defect exclusion to exclude any loss remotely connected to a construction defect, whether or not otherwise covered under the policy.[6] (Economy Mem. in Supp. 14-22.) According to Plaintiffs, however, the exclusion applies to "only that portion of the claim attributable to the defective construction i.e., the cost of making good faulty or defective workmanship, construction, etc. Therefore, the exclusion does not . . . serve as a basis for the denial of the interior water damage sustained by [Plaintiffs], even if that covered damage resulted or ensued from water penetrating the exterior building envelope due to defective construction." (Plaintiffs' Reply Mem. at 3-4.)

In support of their position, Plaintiffs point out that the construction defect exclusion states that it only excludes "loss to property . . . caused by" construction defects, whereas other exclusions in the Policy apply to "loss caused <u>directly or indirectly</u>" or to "<u>loss or damage</u> caused by" various risks. (Policy at 21-22 of 31.) Furthermore, the coverage provision in the policy applies to "actual accidental physical <u>loss or damage</u>" to property. (Policy at 11, 21 of 31.) According to Plaintiffs, this difference in language appearing in the various exclusions within the Policy, and between the construction defect exclusion and the coverage provision, requires that the construction defect exclusion exclude only damage caused directly by a construction defect (for example, the cost to repair the actual defective construction) and not any damage resulting from such defect.

---

[6] As discussed in more detail below, Economy's position regarding the construction defect exclusion is directly contrary to the testimony of adjusters Hage and Bellefeuille.

10

Plaintiffs' reading of the construction defect exclusion is bolstered by the testimony of Economy's claims adjusters, Hage and Bellefeuille, that the Policy covers resulting water damage from construction defects; both Hage and Bellefeuille (Hage's supervisor) testified that Economy does cover "resulting water damage." (Hage Dep. Tr. at 68 ("Does [Economy] pay for resulting water damage?" "Yes."); Bellefeuille Dep. Tr. at 50 (Q: "[If water] [l]eaks through a construction defect and causes damage, that's covered, isn't it?" A: "If it's not mold or rot, yes." Q: "So the mere fact that there's a construction defect does not exclude it from coverage, does not exclude water damage?" A: "Correct"; Q: "Is that commonly referred to as ensuing loss or resulting loss?" A: "Resulting damage.").)

Finally, Plaintiffs point to Economy's coverage of their May 2004 water damage claim as evidence that Economy provides coverage for resulting water damage even if it is in some way caused by construction defects or maintenance issues. (Plaintiffs' Mem. in Supp. at 15.) In May 2004, the home suffered significant water damage. Plaintiffs made a claim under the Policy for that damage. Hage adjusted the claim and determined that the water damage was due to water leaking into the home "[t]hrough the flashing of the chimney." (Hage Dep. Tr. at 37.) She also determined that the cost to repair the flashing of the chimney was <u>excluded</u> under the construction defect exclusion as "maintenance,"[7] (id. at 54), but the "[r]esulting water damage" was <u>covered</u> under the Policy (id.).

---

[7]The construction defect exclusion applies to "Defect, weakness, inadequacy, fault or unsoundness in . . . maintenance." (Policy at 21 of 31.)

11

The Court determines that the construction defect exclusion does not exclude water damage resulting from a construction defect. Nothing in the language of the construction defect exclusion indicates that it extends to any loss resulting, however remotely, from construction defects. The wording of the exclusion is limited to "loss to property . . . caused by" construction defects. (Policy at 21 of 31.) This is in contrast to some of the other exclusions in the Policy which exclude, for example, "loss caused directly or indirectly . . . ," and to the coverage provision of the policy which applies to "loss or damage." (Id. at 11, 21 of 31.) The Court's conclusion that this is a reasonable reading of the plain language of the construction defect exclusion is bolstered by (but not dependent on): 1) the adjusters' testimony that water damage resulting from a construction defect is, as a general matter, covered under the policy; and 2) Economy's handling of the May 2004 claim consistent with such an interpretation of the Policy.

Economy attempts to disown the testimony of its own adjusters, and its handling of the May 2004 claim, by arguing that it is not bound by statements of coverage made by its agents or adjusters. (See, e.g., Economy's Reply at 4-7.) It is clear that, under Minnesota law, "the doctrine of estoppel may not be used to enlarge the coverage of an insurance policy . . . [as] it would be wholly improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid." Shannon v. Great American Ins. Co., 276 N.W.2d 77, 78 (Minn. 1979) (citations omitted); see also Northwest Airlines, Inc. v. Federal Ins. Co., 32 F.3d 349, 356-57 (8th Cir. 1994) (stating that "[i]n general, waiver cannot be used to bring within the coverage of an insurance policy

12

risks not covered by its terms," and citing Shannon).  While the Court agrees that an insurer's duty under a policy "is governed by the terms of the insurance contract," not "coverage representations" made by its agents, Walker v. State Farm Fire & Cas. Co., 569 N.W.2d 542, 545 (Minn. Ct. App. 1997) (citation omitted), it notes that Plaintiffs are not arguing for coverage by estoppel in the instant case.  Rather, the Court's conclusion here is that the plain language of the construction defect exclusion does not explicitly extend to any loss indirectly caused by construction defects.  Therefore, the Court determines that it is not prevented from consideration of the reasonableness of the Economy adjusters' interpretation of the construction defect exclusion.

It is also worth noting that a reading of the construction defect exclusion that extends that exclusion only to damage directly related to an actual defect is consistent with the requirement that exclusions in insurance contracts be read narrowly against the insurer.  It is well settled under Minnesota law that "in insurance contracts, coverage provisions are construed according to the expectations of the insured and exclusions are construed narrowly."  American Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001).  There is no dispute that water damage is covered under the Policy.  And the plain language of the construction defect exclusion applies to loss caused by the construction defect itself, not to other causes of loss otherwise covered under the Policy.  See also SCSC Corp., 536 N.W.2d at 314.  Accordingly, the Court determines that the construction defect exclusion does not exclude coverage for otherwise covered water loss that may have some

13

indirect relation to construction defects and Plaintiffs are entitled to summary judgment as to Count III of their Complaint.

**B.     The Mold Exclusion**

Economy also argues that the Policy "bars coverage for physical damage caused by . . . mold," and that "[e]ven if there were a covered water loss, such coverage would be limited to $5,000 total for any mold remediation treatment, testing, and living expenses." (Economy Mem. in Supp. at 23.)  Plaintiffs counter that the mold exclusion applies to damage <u>caused by</u> mold independent of a covered water loss, but does not exclude mold that results directly from a covered water loss.  (Plaintiffs' Mem. in Opp'n at 18.)  The Policy contains a general exclusion for mold, which states:

> [The Policy], doesn't cover physical damage caused by wear and tear, latent defect, mechanical breakdown, rust, <u>mold</u>, wet or dry rot, contamination, corrosion, industrial or agricultural smoke, vermin, rodents, termites, insects, or domestic animals, or electrolysis.

(Policy at 15 of 31 (emphasis added).)

The Court determines that the mold exclusion does not apply to mold resulting from a covered water loss.  The language of the exclusion indicates that the excluded damage is that occurring over a long period of time, independent of a covered water loss.  For example, the exclusion applies to damage due to wear and tear, rust, wet or dry rot, and corrosion.  (Policy at 15 of 31.)   These are all conditions that occur gradually over a period of time.  This reading is also supported by the fact that the exclusion applies to physical damage <u>caused by</u> mold, rather than to the occurrence of mold due to a separate

14

covered water loss. Thus, with respect to mold resulting from a covered water loss, the Court concludes that the mold exclusion does not operate to bar coverage.[8]

Economy also argues that, to the extent the mold resulted from a covered water loss, Economy's liability is limited by a Minnesota Amendatory Endorsement (the "Endorsement"), which Economy alleges amended the Policy at some point.[9] The Endorsement provides in relevant part:

> The following definition is added to the Your Property Coverage section of your policy. This change defines coverage.
>
> > "Mold" means fungi, mushrooms, bacteria, mildew, wet rot, or dry rot . . . .
>
> The following is added to the Your Property Coverage section of your policy. This change provides limited coverage.
>
> > Mold Remediation. We'll pay up to a limit of $5,000 for remediation treatment and remediation testing necessary to complete the repair or replacement of the property damaged by a covered water loss . . . .
> >
> > This coverage applies to your covered home . . . . However, this coverage applies only: when property is damaged by a covered water loss.

---

[8] The Court notes that this conclusion is consistent with the Mold Handling Protocol implemented by Economy, which provides that "[m]old as a result of a covered water damage loss **is covered** under all policies presently written by Met Life Auto & Home." (Plunkett Aff. Ex. N (emphasis in original).) Economy adjuster Bellefeuille testified that the Mold Handling Protocol was applicable to the July 2004 claim. (Bellefeuille Dep. Tr. at 41-42, 45.)

[9] It is not entirely clear from the record when the Endorsement would have been sent to Plaintiffs; however, the Endorsement itself is dated February 2003. (Endorsement at 1 of 6.)

15

(Endorsement at 2-3 of 6.) According to Economy, if the mold at issue here did result from a covered water loss, Plaintiffs' coverage is limited to $5,000 for "remediation treatment and remediation testing." (Id.)

Plaintiffs argue that the Endorsement is not a part of the Policy because they were not properly notified of its contents or applicability under Minnesota law. (Plaintiffs' Mem. in Opp'n at 10-12.) Economy did not assert the applicability of the Endorsement in its denial of coverage letter to Plaintiffs, or at any time during the instant litigation prior to its initial summary judgment brief. (See Plunkett Aff. Ex. I.) Nor does the record indicate when or under what circumstances Plaintiffs received the Endorsement.

"It is the rule in Minnesota that when an insurer, by renewal of a policy or by an endorsement to an existing policy, substantially reduces the prior coverage provided the insured, the insurer has an affirmative duty to notify the insured by written explanation of the change in coverage. Failure to do so will render void the purported reduction in coverage." Cambell v. Ins. Serv. Agency, 424 N.W.2d 785, 790 (Minn. Ct. App. 1988) (citation omitted). An insurer must, therefore, "inform the insured by cover letter or a conspicuous heading to the amendatory endorsement" of any basic insurance coverage changes. Id. (citation omitted). Actual receipt of the amendment, without such notice of changes, is insufficient. See id.

The record here is devoid of any indication that Plaintiffs were put on notice by a cover letter explaining the reduction of coverage for mold resulting from a covered water

loss to a maximum of $5,000.[10]  Economy does not claim such notice was given, and Plaintiffs assert none was received.  Economy's argument on this point is that it "did include a complete certified copy of the [Policy, which included the Endorsement] in Timothy J. O'Connor's Affidavit in support of Economy's motion for summary judgment." (Economy's Reply at 10.)  This is not sufficient notice under Minnesota law.  See Cambell, 424 N.W.2d at 790.  Accordingly, the Court determines mold resulting from a covered water loss is covered under the Policy and that coverage is not limited by the Endorsement.

### Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 58) is **DENIED**; and

2. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 54) is **GRANTED**.[11]

Dated: February  1 , 2006                         s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge

---

[10] The Court also determines that the Endorsement does not contain a "conspicuous heading" which would alert an insured to the changes in coverage for mold remediation at issue here.

[11] By agreement of the parties and the Court, this case has been bifurcated into a liability phase and a damages phase.  Although the Complaint seeks only a determination of coverage for Plaintiffs' underlying insurance claim, Plaintiffs have indicated that they "will amend the complaint to incorporate the damages aspect of the case should [their motion for partial summary judgment] be granted."  (Doc. No. 54, at 2, n.1.)  Therefore, their Motion was only for partial summary judgment.